Indictment for murder. — The attorney-general produced in court a boy about ten years of age, the brother of the defendant, desiring that the Court would examine and see if he was of sufficient discretion to be sworn and sent to the grand jury. Upon examination, it appeared that he had not any sense of the obligation of an oath, nor of any of the consequences of swearing falsely. He had not even an idea of a future state of existence.
He cannot be sworn. At fourteen years of age the law presumes discretion; under that age it does not, and it must be shown; so far from this child having discretion, it is directly the reverse.
The attorney-general then moved that the child's story might be heard by the grand jury without being sworn.
Sed Per Curiam. This cannot be done in any case. 1 M'N. 95; Leach's Cr. Law, 2d ed. 337; 1 M'N. 151, 152; 6 Bac. Ab. 461.
The grand jury having found a true bill for the murder of her father, lately resident in Hawkins county, —
On Saturday she was brought to the bar, and appeared to be between twelve and thirteen years of age. Upon being arraigned, she stood mute. The Court assigned attorneys Grey and Powel as her counsel, being poor, and without friends or relations to assist her.
After this assignment of counsel, she was remanded.
The Monday following she was again brought to the bar, and again stood mute. The Court directed a jury to be impanelled and sworn in the following manner: —
"You swear that you will well and truly inquire whether the person at the bar, Mary Doherty, stands mute through malice or the visitation of God."
Mr. Beaty, a witness, was called, who deposed that he had lived about a mile from the deceased Michael Doherty. Had known the girl about three years, and she always appeared to have common sense. Had heard her talk frequently as other people, was *Page 81 
in the jail to see her last week, and spoke to her, and particularly respecting her brothers and sisters.
Several other persons then spoke to her, but she made no answer, and appeared to be senseless.
Her eyes appeared to be nearly closed, and, whilst speaking to her, saw no difference in her manner. M. Shiply lived close to where the deceased resided. The last time he saw the prisoner was when she was arrested and taken from home; she talked more that day than he ever heard her, for she usually did not talk much.
He always believed she could talk as well as others until lately. He was in the jail this day week, talked to her, but saw no sign of understanding nor alteration in her countenance. Mr. Patten, the jailer, heard her speak three or four times, soon after she came, but they were the monosyllables yes or no ; had not heard her speak for eight weeks; she had been in jail about four months, three months of the time he had acted as jailer. When he first had the care of her, he endeavored to get her to eat for several days, but without effect; he left the victuals with her, after being afraid that she would perish.
The victuals left were gone, though he cannot say that she ate them, but supposes she did. She seems to have been insane ever since her being in jail, about four months.
He told her to change her clothes and to sweep the jail, and found it done afterwards, though he has once or twice known the jail swept without telling.
She lay on a bed of straw, and he always found her on her right side, covered with a blanket, in the hottest weather.
She did not discover any uneasiness from confinement. He always had to raise her up; she has not swept the jail for two or three weeks.
He often made efforts to get her to speak himself, and many others in his presence, but all without effect.
When he heard her speak, it was to a black girl of Mr. M'Allister. Had lately seen the negro girl try to get her to speak, but she did not. At another time he heard her speak; it was when Mr. Fane was *Page 82 
in the jail. Mr. Fane told her he was to stay in jail with her, and asked her if she would give him her blanket; she answered no.
This morning her brother went into jail, and spoke to her, but saw no alteration in her countenance. Her eyes are, as you usually see them, nearly closed, and I do not recollect to have seen her wink them.
Mr. Fane heard her speak six or eight weeks before, once or twice; had been in the jail several times, but she did not speak.
Mr. Long, the former jailer, kept the jail about thirty days; during that time never heard her speak but once, and that was to the negro girl of Mr. M'Allister. He was in the jail once or twice every day, and at first she did not eat any thing without force. He thought she would perish with hunger. During his care of her, he never saw the least alteration in her looks; her eyes were always closed. When he went into jail he always found her lying. He tried frequently to get her to speak by persuasion and threats, but never could. Once he saw her smile when the black girl was dressing her.
The attorney-general offered to produce evidence respecting the guilt of the defendant, which he insisted was matter of evidence to show that she had a motive for standing mute; and cited 2 H. H. P. C. 321, 322, 323.